Sam WILLIAMS, Plaintiff–Appellant,

v.

Dwight BROWMAN;  Grant Harris; Daniel Barnes, Defendants–Appellees.

No. 91–2249.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 2, 1992.

Decided Dec. 14, 1992.

Sam Williams, Jr., pro se.

Deborah K. Isom, Asst. Atty. Gen., Corrections Div., Lansing, MI, Judith I. Blinn, Asst. Atty. Gen. (briefed), Accident Fund Div., Lansing, MI, for defendants-appellees.

Before: KEITH, JONES and BOGGS, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant, Sam Williams, Jr. ("Williams"), appeals from the district court's summary judgment dismissal of his 42 U.S.C. § 1983 prisoner's civil rights action.  Williams alleges that his First,

Eighth, and Fourteenth Amendment rights were violated by officials[1] ("defendants") at the Alger Maximum Correctional Facility (the "Alger Facility"). The defendants moved for dismissal of the claim pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted. In the alternative, the defendants moved for summary judgment pursuant to Fed. R.Civ.P. 56(b). The district court relied on materials outside of the pleadings and granted the defendants' motion for summary judgment. For the reasons stated below, we AFFIRM the district court's summary disposition.

## I.

On September 21, 1990, when the events that gave rise to this civil rights action occurred, Williams was incarcerated at the Alger Facility.[2] Williams claims that, on September 21, while he was in administrative segregation awaiting transfer to another facility, the defendants approached his cell door and threatened to kill him. Williams' amended complaint stated that the defendants announced that they wanted to beat the "nigger" before his transfer. After opening the door, Williams alleges that the defendants beat him for five minutes while making various racial remarks. At this point, Williams alleges that other officers appeared and stopped the incident. Williams asserts that this treatment violated the Eighth Amendment.

Williams later added Warden Stine to his suit, asserting that he knew or should have known that the guards at Alger Facility had racist propensities, and that he breached his duty to ensure the safety of all prisoners by failing to institute race sensitivity programming and other training to combat the problem. Williams also alleges that Stine has accepted false or misleading misconduct reports which allow the guards to continue these racist and abusive tendencies. Williams asserts that these actions violate his First and Fourteenth Amendment rights to petition the facility for redress of grievances.

Defendants' affidavits indicate that, on September 21, 1990, Williams was to be transferred to another facility. These affidavits state that, upon entering the cell, a dispute arose with regard to the clothing that Williams would wear during the transfer. At this point, the defendants attempted to put Williams in belly chains, and Williams allegedly struck defendant, Grant Harris. After Williams was subdued, he allegedly spit on Defendant Harris. The record further indicates that a medical examination showed no injury to Williams.

The district court also entertained allegations in Williams' amended complaint against various county and state personnel for conspiracy to retaliate against him by filing criminal charges for his allegedly striking Defendant Harris.

With this factual background, the district court entertained the defendants' motion for dismissal. The court properly characterized the motion as one for summary judgment because it relied on evidence outside of the pleadings to dispose of the case. The district court noted that Williams had submitted nothing to controvert the defendants' affidavits and medical records. The court also noted that Williams' motion for enlargement of time to respond to defendant's motion had been granted but that Williams had failed to provide any additional response.

On July 27, 1991, the district court granted defendants' summary judgment motion. Relying on *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986), the district court held that Williams' amended complaint amounted to "mere conclusory allegations that cannot survive a motion for summary judgment." The court further determined that the record indicates that there had been no Eighth or Fourteenth Amendment constitutional violations based on the facts alleged. This judgment was entered by the district court on July 30, 1991.

---

**1.** Dwight Browman, Grant Harris, and Daniel Barnes are all Resident Unit Officers at Alger Maximum Correctional Facility.

**2.** Williams is presently incarcerated at the Standish Maximum Correctional Facility.

On August 29, 1991, the district court received a handwritten letter from Williams requesting reconsideration of its July 30, 1991 judgment. On September 13, 1991, the district court denied Williams' request for relief from the summary judgment dismissal. Williams filed his notice of appeal on October 7, 1991.

## II.

On appeal, Williams alleges that the district court improperly entered the summary judgment because it failed to give him "fair notice of [the] requirements of the summary judgment rule ... and it fail [sic] to appoint [him] counsel to assist [him] in the legal and factual issues that are sufficiently complex to warrent [sic] appointment of counsel." In particular, Williams asserts that the district court failed "to hold an evidentiary hearing, which would have allowed [him] to present [his] evidence and call [his] witnesses to testify to material facts of this case." Because the district court committed no reversible error, we AFFIRM.

## A.

■ It is well established that a *pro se* pleadings should be construed more liberally than pleadings drafted by lawyers. *See, e.g., Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir.1989), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990). We construe Williams' letter requesting reconsideration as a motion for relief from judgment filed under Fed.R.Civ.P. 60(b). *See Smith v. Secretary of HHS*, 776 F.2d 1330, 1332 (6th Cir.1985). A motion for relief from judgment filed pursuant to Rule 60(b) "does not toll the time of appeal from, or affect the finality of, the original judgment." *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). While Williams filed his notice of appeal on October 7, 1991, sixty-nine (69) days after entry

of the original judgment, he did file a timely appeal from the district court's September 13, 1991 order.[3] Therefore, our review on appeal is limited to the district court's denial of Williams' motion for reconsideration.[4] We review a denial of a Rule 60(b) motion for abuse of discretion. *In re Sales Mortgage Co.*, 791 F.2d 456, 459–60 (6th Cir.1986). Abuse of discretion has been defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989).

## B.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Williams contends that, because he was acting *pro se*, he was unaware of the requirement that he file additional support for his complaint to defeat the opposition's summary judgment motion. There is no authority in this Circuit for the proposition that a district court must advise a *pro se* prisoner of his right to file counter-affidavits or other responsive material or that he must be alerted to the fact that his failure to so respond with such material might result in entry of summary judgment against him. Other circuits, however, have held that, because summary judgment is a final adjudication on the merits, a *pro se* party must have notice of the consequences of failing to respond to a motion for summary judgment and fair notice of the requirements of the summary judgment rule before summary judgment may be entered

---

3. On May 11, 1992, Judges Jones, Guy, and Joiner declined to dispose of this case under the Sixth Circuit's Rule 9 procedure and referred the case to a three-judge panel for a hearing on the merits.

4. Generally, this court reviews a grant of summary judgment in a 42 U.S.C. § 1983 claim *de novo*.

against him. *See Kelley v. McGinnis,* 899 F.2d 612, 615 (7th Cir.1990) (per curiam); *Klingele v. Eikenberry,* 849 F.2d 409, 411 (9th Cir.1988); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *United States v. One Colt Python .357 Cal. Revolver, S/N TO3461 w/ Holster,* 845 F.2d 287, 289 (11th Cir.1988); *Fox v. Strickland,* 837 F.2d 507, 509 (D.C.Cir.1988); *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975) (per curiam).

After granting Williams an enlargement of time to respond, the district court determined that because "[p]laintiff has submitted nothing to controvert defendants' affidavits and medical records," summary judgment was proper since plaintiff made "nothing but mere conclusory allegations that cannot survive a motion for summary judgment."

This court first acknowledges that Williams did verify the allegations in his complaint by making them under "penalty of perjury." The United States Code specifically provides for verification of unsworn complaints, thereby allowing *pro se* appellants to controvert sworn affidavits and place into issue material facts. 28 U.S.C. § 1746 provides as follows:

### Unsworn declarations under penalty of perjury.

Whenever, under any law of the United States or under any rule, regulations, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

In *Carter v. Clark,* 616 F.2d 228 (5th Cir.1980), the Fifth Circuit struck down a local rule that required all pleadings of prison inmates be notarized stating that the rule was in conflict with this federal statute. The court determined that "[t]he statute provides that in all federal proceedings, written declarations made under 'penalty of perjury' were permissible in lieu of sworn affidavits subscribed to before notary publics." *Id.* at 229. Moreover, the legislative history of the statute explicitly states that "[t]he purpose of this legislation is to permit the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits." H.R.Rep. No. 1616, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.C.C.A.N. 5644. The history further provides:

Section 1746 also sets forth the language that must appear in the document in order for it to qualify as an unsworn declaration under penalty of perjury. If the document is executed within the United States, it must be subscribed to as follows:

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature).

*Id.* at 5645.

By contrast, the district court, in *McNeal v. Macht,* 763 F.Supp. 1458, 1461 (E.D.Wis. 1991), stated that a *pro se* civil rights plaintiff's signature on a form complaint containing verification language was sufficient to transform "mere allegations" of plead-

ings into "specific facts" as in an affidavit. Focussing on the purpose of the statute and the *pro se* prisoner's subscription to the sworn language, the court held that the plaintiff's failure to bring additional evidentiary materials in opposition to defendant's motion for summary judgment did not mandate dismissal.

A panel of this court has also determined that the *handwritten* complaint of a *pro se* prisoner may defeat a defendant's motion for summary judgment because it contained language that verified the complaint within the meaning of the statute. *See Brown v. Waters,* 959 F.2d 233 2104, (6th Cir.1992) (unpublished per curiam). *Pro se* petitioner Brown's complaint contained the following handwritten language:

[Signature of Plaintiff Brown]

I declare under penalty of perjury that the foregoing statements in My complaint herein from page 1 through page 58 is [sic] true and correct to the best of my knowledge, belief, and understanding.

Signed the 17th day of January, 1991

[Signature of Plaintiff Brown]

While it is clear that a handwritten verification would suffice to place into issue controverted facts, we believe that the stated purpose of 28 U.S.C. § 1746 is accomplished whether the verification statement is handwritten or typewritten and simply undersigned. Therefore, a verified complaint in either form would have the same force and effect as an affidavit and would give rise to genuine issues of material fact.

■ In the case at bar, Williams signed a form complaint containing the typewritten statement, "I declare under penalty of perjury that the foregoing is true and correct." Thus, Williams' complaint in this action was verified within the language of 28 U.S.C. § 1746. Accordingly, he has pled specific facts that must be addressed before the district court may dismiss the case.

## C.

Our inquiry, however, does not end with the verification of Williams' complaint. In our appellate posture, we must now determine whether the district court abused its discretion in making its qualitative legal assessment of the allegations in the complaint.

The district court noted that, in *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court stated:

> Where a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Id.* at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). The district court also quoted the *Johnson* court, which had stated:

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of judge's chambers, violates a prisoner's constitutional rights.

*Johnson,* 481 F.2d at 1033. The district court then determined that "based on the plaintiff's and defendants' description of the events in question," Williams' allegations did not trigger Eighth or Fourteenth Amendment claims.

In *McHenry v. Chadwick,* 896 F.2d 184 (6th Cir.1990), this Circuit elaborated on the proper inquiry in these cases stating:

> In *Parrish v. Johnson,* 800 F.2d 600 (6th Cir.1986), this court recognized that in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline, however:
>
>> A violation of the Eighth Amendment nevertheless will occur if the infliction

of pain upon a prisoner is both unnecessary and wanton. In determining whether a prisoner's claim rises to this level, the reasons or motivation for the conduct, the type and excessiveness of the force used, and the extent of the injury inflicted should be considered.

*Id.* at 604–06. Likewise, in *Lewis v. Downs,* 774 F.2d 711 (6th Cir.1985), this court held that a serious or permanent injury was not a prerequisite to a claim under 42 U.S.C. § 1983, however, in determining whether or not a constitutional violation had occurred, *"all the facts and circumstances surrounding the application of force must be scrutinized and weighed." Id.* at 714.

*Id.* at 187 (emphasis added).

 Given the record before the district court, we simply cannot say that the district court made a clear error of judgment in denying Williams relief from the summary judgment dismissal. The court was presented with affidavits that portrayed facts not inconsistent with Williams' complaint. The guards stated that they entered the cell to force Williams to comply with an order to change his clothing for his administrative transfer. Medical records also indicated that Williams suffered no cognizable injury during the altercation. Scrutinizing all of the facts and circumstances surrounding this application of force, the district court made the judgment that no Eighth or Fourteenth Amendment violation occurred. Given our limited review of this particular appeal, the district court did not abuse its discretion when it denied relief from its summary judgment dismissal.[5]

### III.

We, therefore, AFFIRM the denial of relief from the summary judgment dismissal issued by the Honorable Benjamin Gibson, United States District Judge for the Western District of Michigan in its September 13, 1991 order.

---

5. We observe that, if we were reviewing Williams' complaint *de novo,* his claims arguably may have some merit.