RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0157P (6th Cir.)
File Name: 03a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

     *v.*

NINETY-THREE (93)
FIREARMS, AND ASSORTED
FIREARM PARTS AND
AMMUNITION,
     *Defendant,*

LARRY Z. SHORT,
     *Claimant-Appellant.*

No. 01-5348

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-02730—Julia S. Gibbons, District Judge.

Submitted: December 13, 2002

Decided and Filed: May 27, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
FORESTER, Chief District Judge.*

---

    * The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

## COUNSEL

**ON BRIEF:** Michael F. Pleasants, PLEASANTS LAW FIRM, Memphis, Tennessee, for Appellant. Christopher E. Cotten, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

## OPINION

    KAREN NELSON MOORE, Circuit Judge. The United States brought this civil *in rem* forfeiture action, under 18 U.S.C. § 924(d), for the forfeiture of ninety-three firearms involved in a § 922(g)(1) violation, nearly five years after the property originally was seized. In response, Claimant-Appellant Larry Zane Short ("Short"), the owner of the seized property, moved to dismiss the action on both statutory and constitutional grounds. The district court denied Short's motion to dismiss and granted the government's motion for summary judgment. On appeal, Short argues that the district court erred in finding that the judicial proceeding was timely under § 924(d)(1) and in applying the statute of limitations in 19 U.S.C. § 1621. Short also argues that his due process rights were violated by the five-year delay in bringing the action and the six-month delay in service of process. Finally, Short insists that the district court erred by failing to inform him, a pro se litigant, of the requirements and consequences of a summary judgment motion.

    We hold that either an administrative or a judicial forfeiture action brought within 120 days of the seizure will toll the § 924(d)(1) deadline. In addition, the government's five-year delay in bringing proceedings and its six-month delay in serving Short with process did not rise to the level of a due process violation. Finally, in this circuit, nonprisoner pro se litigants are not entitled to notice of the consequences and

requirements of a summary judgment motion. Even if Short is considered a prisoner pro se litigant and, therefore, is entitled to notice of the requirements in responding to a summary judgment motion, any alleged error was harmless. Accordingly, we **AFFIRM** the district court's decision.

## I.  BACKGROUND

On August 26, 1994, Bureau of Alcohol, Tobacco, and Firearms ("BATF") and Drug Enforcement Administration ("DEA") agents executed a search warrant at Short's home and seized ninety-three assorted firearms and ammunition. At the time this search warrant issued, Short was prohibited from possessing firearms or ammunition pursuant to 18 U.S.C. § 922(g)(1) because he was previously convicted for violations of the Gun Control Act. The firearms possessed in violation of § 922(g) therefore were subject to seizure and forfeiture under 18 U.S.C. §924(d)(1). In just over a month's time, BATF commenced administrative forfeiture proceedings against these firearms by publication in *USA Today* on October 6, 13, and 20, 1994. On August 22, 1995, the BATF interpreted a letter filed by Short in November 1994 requesting the return of the property as a petition for remission or mitigation and denied this request.

Meanwhile, on October 17, 1994, Short was indicted by a grand jury on four counts of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d); one count of possessing unregistered firearm silencers in violation of 26 U.S.C. § 5861(d); and one count of possession of a firearm after conviction of a felony in violation of 18 U.S.C. § 922(g). On March 7, 1995, Short entered a conditional guilty plea to two counts involving possession of unregistered firearms and one count of possessing unregistered firearm silencers. His sentencing hearing was held in abeyance while he was turned over to the Bureau of Prisons ("BOP") for psychological evaluations. The sentencing hearing was finally conducted on September 15, 1995, and Short received a seventy-eight

month sentence and three years of supervised release. On direct appeal, we affirmed his conviction and sentence.

On August 20, 1999, almost five years after the original seizure, the government instituted a judicial forfeiture action under § 924(d)(1) seeking forfeiture of the firearms seized in the search. Short filed a motion to dismiss on the basis that the complaint was untimely pursuant to § 924(d)(1), the five-year delay violated his due process right to a prompt hearing, and the action violated the Excessive Fines Clause. The district court partially denied the motion but ordered the government to show cause for the untimely complaint. In response to the show-cause order, the government admitted that it did not issue service of process within the time demanded under the Federal Rules of Civil Procedure, but indicated that after the entry of the show-cause order a copy of the complaint was served upon Short's attorney, Logan Sharp ("Sharp"), who agreed to accept service on behalf of his client. A few days later, Sharp filed an affidavit with the court, swearing that he did not agree to accept service on behalf of Short, that he did not accept service on his behalf, and that he did not represent Short in the forfeiture action.

On June 22, 2000, the government sent requests for admission to Short at the place of his incarceration. The requests asked him to admit that he was previously convicted for violations of the Gun Control Act which are punishable by a prison term of over one year, that he was aware that due to this conviction he could not possess firearms, and that the defendant firearms were in his possession on the date of seizure. Short did not respond to these requests within the thirty-day period, nor did the court or parties agree to an extension of time; thus, Short's failure to respond served as a constructive admission. On July 12, 2000, Short was released from prison. A few months later, on October 17, 2000, Short requested that the court appoint him counsel. Noting its broad discretion to appoint counsel for indigent civil litigants, the district court denied Short's motion for appointment of counsel because he had not shown

"exceptional circumstances." The government successfully moved for summary judgment, and this timely appeal followed.

## II. ANALYSIS

We review de novo a district court's order granting summary judgment. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001), *cert. denied*, 534 U.S. 1132 (2002). In accordance with Federal Rule of Civil Procedure 56(c), this court affirms a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477-78 (6th Cir. 1989). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to grant summary judgment, we view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The issues that we must review on this appeal are whether summary judgment was proper because: (a) the judicial forfeiture action was timely under § 924(d)(1); (b) Short's due process rights were not violated by the five-year delay in bringing the action and by the six-month delay in service of process; and (c) the court's failure to inform Short, a nonprisoner pro se litigant, of the requirements and consequences of a summary judgment motion was not error.

### A. Timeliness of the Forfeiture Action

The first question presented on this appeal is whether administrative forfeiture actions brought within the 120-day time period sufficiently comply with the letter of the law, as provided in § 924(d)(1), when the judicial proceedings are not brought also within the permissible 120 days. Section 924(d)(1) provides, in part: "Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure." 18 U.S.C. § 924(d)(1). Although this is a question of first impression in the courts of appeals, a number of district courts have published opinions addressing this very question. *See, e.g.*, *United States v. Assorted Firearms*, 201 F. Supp. 2d 496, 498 (D. Md. 2002) (noting that "where . . . administrative proceedings are timely instituted, a subsequent judicial action need not be instituted within 120 days of the seizure"); *United States v. Sixty Firearms*, 186 F. Supp. 2d 538, 545 (M.D. Pa. 2002) (stating that administrative proceedings would be foiled by a process requiring the judicial action to be commenced within the same 120-day period); *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 150 F. Supp. 2d 988, 992 (C.D. Ill. 2001) (holding that a forfeiture action is timely so long as "at least" an administrative action is filed within the 120-day statutory period); *United States v. Twelve Firearms*, 16 F. Supp. 2d 738, 741 (S.D. Tex. 1998), *aff'd*, 54 Fed. Appx. 405, 2002 WL 31688616, at *1 (5th Cir. Oct. 28, 2002) (concluding that the statute required "*either* an administrative forfeiture proceeding *or* a judicial forfeiture action within 120 days of a seizure"); *United States v. Fourteen Various Firearms*, 889 F. Supp. 875, 877 (E.D. Va. 1995) (holding that the district court lacked jurisdiction to hear the case because both the administrative and the judicial forfeiture actions were not commenced within the 120-day timeframe); *United States v. Twelve Miscellaneous Firearms*, 816 F. Supp. 1316, 1317 (C.D. Ill. 1993) (deciding that although the phrase "any action or proceeding" includes both judicial and administrative actions, the statute was satisfied so long as either action was brought within 120 days). In the instant case, the district court agreed with the rationale from *Twelve Firearms* that taking an administrative forfeiture action alone was sufficient compliance with the 120-day requirement and

granted summary judgment for the government. On appeal, Short urges us to accept the rationale of *Fourteen Various Firearms* and dismiss this case for lack of jurisdiction based on the government's failure to file a judicial action within the 120-day requirement. Short contends that the statute's meaning is plain and unambiguous and that "any" means *both* administrative and judicial proceedings, and thus, in order to comply with § 924(d)(1), both actions must be brought within 120 days of the seizure.

In its opinion, the district court first recognized the general rule that seized property, other than contraband, should be returned to its rightful owner at the completion of criminal proceedings. *See United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977). With respect to firearms, a potential claimant has no right to contest seizure of weapons "intrinsically illegal in character" because he would have no property right in such a weapon. *Cooper v. City of Greenwood*, 904 F.2d 302, 304 (5th Cir. 1990). On the other hand, the district court noted, a claimant "may have an ownership interest" in firearms, not intrinsically illegal. Joint Appendix ("J.A.") at 93 (Dist. Ct. Op.). According to the district court, because § 924(d)(1) explicitly provides that firearms and ammunition involved in a knowing violation of § 922(g) are subject not only to seizure and forfeiture but also to relevant provisions of the Internal Revenue Code which contain a five-year statute of limitations, the judicial action was timely brought as long as the administrative action tolled the 120-day deadline. Persuaded by the rationale of *Twelve Firearms*, the district court found that the government met § 924(d)(1)'s requirements because commencing an administrative forfeiture proceeding is sufficient for compliance with the 120-day requirement. *See generally Twelve Firearms*, 16 F. Supp. 2d at 741 (commenting that any requirement that both proceedings be initiated within this brief 120-day period "defeat[s] the purpose of simplified administrative proceedings").

The key to this case turns on statutory interpretation. We begin our analysis by looking at "the language of the statute itself" to determine if its meaning is plain. *U.S. Dep't of the Treasury v. Fabe*, 508 U.S. 491, 500 (1993); *United States v. Choice*, 201 F.3d 837, 840 (6th Cir.), *cert. denied*, 530 U.S. 1209 (2000). Plain meaning is examined by looking at "'the language and design of the statute as a whole.'" *Choice*, 201 F.3d at 840 (quoting *United States v. Meyers*, 952 F.2d 914, 918 (6th Cir.), *cert. denied*, 503 U.S. 994 (1992)). When interpreting the plain language of a statute, we "mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000) (quotation omitted). However, if the textual analysis is unclear or leads to ambiguous or unreasonable results, legislative history may be used to guide our interpretation of a statute. *The Limited, Inc. v. Commissioner*, 286 F.3d 324, 332 (6th Cir. 2002). Moreover, "[j]udicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided." *Commissioner v. Asphalt Prods. Co.*, 482 U.S. 117, 121 (1987). We review de novo questions of statutory interpretation. *Choice*, 201 F.3d at 840.

The first court to address the question of whether timely administrative forfeiture actions without concurrent judicial proceedings comply with § 924(d)(1) determined that the filing of an administrative forfeiture within the 120-day period was adequate to confer jurisdiction. *See Twelve Miscellaneous Firearms*, 816 F. Supp. at 1317. In *Twelve Miscellaneous Firearms*, the court determined that the statutory phrase "any action or proceeding" included both judicial and administrative actions, and therefore bringing either within the timeframe was sufficient for compliance with the statute. *Id.* Following the logic of *Twelve Miscellaneous Firearms*, the district court in *Twelve Firearms* concluded that the government satisfied the 120-day time limit of § 924(d)(1) by timely bringing an administrative

forfeiture action. *See Twelve Firearms*, 16 F. Supp. 2d at 741. *Twelve Firearms* interpreted the absence of more specific language in § 924(d)(1) as intentional:

> First, . . . if Congress had intended that the time limit provided in §924(d)(1) should *always* apply to the filing of a judicial complaint for forfeiture of firearms, even when an administrative proceeding has also been initiated, it could have easily specified so in the statute, as it did in 21 U.S.C. § 888(c) with respect to drug-related forfeitures.

*Id.* As a secondary rationale, the *Twelve Firearms* court commented that dual proceedings would "defeat the purpose of simplified administrative proceedings." *Id.*

We are convinced that the approach taken by *Twelve Miscellaneous Firearms*, *Twelve Firearms*, and other district courts that followed their lead, is correct. Beginning with the statute's language itself,[1] we first assess whether its meaning

---

[1]The statute provides in full:

Any firearm or ammunition involved in or used in any knowing violation of subsection (a)(4), (a)(6), (f), (g), (h), (i), (j), or (k) of section 922, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter. *Provided*, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining

is plain. *See The Limited, Inc.*, 286 F.3d at 332. We agree that the "meaning of the word 'any' in § 924(d)(1) is ambiguous." *Twelve Firearms*, 16 F. Supp. 2d at 741. As the government points out, the proof of the ambiguity is evidenced by the disagreement over its meaning; some district courts have read "any" to mean "either/or," whereas at least one district court has interpreted "any" to mean "all" or "every." *Compare id.* ("the time limitation in § 924(d)(1) merely requires the United States to initiate *either* an administrative forfeiture proceeding *or* a judicial forfeiture action within 120 days of a seizure."), *with Fourteen Various Firearms*, 889 F. Supp. at 877 (deciding that the word "any" made it imperative that, irrespective of which type of proceeding was at issue, "*any* administrative proceeding *or* judicial action for the forfeiture of the . . . firearms had to begin within 120 days" and that a judicial action brought after 120 days was too late). Because the statutory language is ambiguous, we engage the entire text and structure of the statute, being careful not to interpret it in a way that "renders other provisions of the same statute inconsistent, meaningless or superfluous." *Cafarelli*, 226 F.3d at 499 (quotation omitted).

Interpreting the statute in its entirety, we cannot ignore that § 924(d)(1) expressly incorporates provisions of the Internal Revenue Code relating to forfeiture. *See* 18 U.S.C. § 924(d)(1) ("all provisions of the Internal Revenue Code . . . relating to the seizure, forfeiture, and disposition of firearms, . . . shall, so far as applicable, extend to seizures and

---

order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

18 U.S.C. § 924(d)(1).

forfeitures under the provisions of this chapter."). One such provision, 26 U.S.C. § 7327, incorporates the provisions of the customs forfeiture laws which provide in 19 U.S.C. § 1621 for a five-year statute of limitations for bringing a judicial forfeiture action. *See* 26 U.S.C. § 7327 ("The provisions of law applicable to the remission or mitigation by the Secretary of forfeitures under the customs laws shall apply to forfeitures incurred or alleged to have been incurred under the internal revenue laws."). Because we assess the plain meaning by looking at "the language and design of the statute as a whole," we must consider § 924(d)(1)'s express language applying provisions in the Internal Revenue Code to forfeitures under § 924(d)(1) when we attempt to discern the statute's meaning. *See Choice*, 201 F.3d at 840 (citation omitted). Surely § 924(d)(1)'s inclusion of relevant Internal Revenue Code provisions, and hence, the five-year statute of limitations for judicial forfeiture actions, must have some bearing on judicial forfeiture actions in the firearm context. In our estimation, this five-year statute of limitations becomes applicable once an administrative action has tolled the 120-day requirement for initiation of an administrative forfeiture action or a judicial forfeiture proceeding.

A requirement that both administrative and judicial proceedings be initiated within the same 120-day period does not make sense for two primary reasons: (1) administrative forfeitures are favored, and (2) the opportunity for bringing a judicial forfeiture action could be lost while the parties await a decision on the administrative forfeiture proceeding. *See generally United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555 (1983) (noting that permitting the government to wait for a decision on an administrative forfeiture action is beneficial to the claimant, government, and court system); *Sixty Firearms,* 186 F. Supp. 2d at 545 (stating that because administrative forfeiture proceedings alleviate the need for judicial action, "[i]t makes little sense to require the government to initiate both an administrative proceeding and a judicial forfeiture action within 120 days of seizure of the

property"). The purpose of administrative proceedings, as stated by the *Twelve Firearms* court, "is to provide, if possible, a mechanism for the government and private parties to resolve their forfeiture-related disputes without the need for judicial actions." *Twelve Firearms*, 16 F. Supp. 2d at 741. As the Supreme Court noted in a decision involving the post-seizure filing of a judicial forfeiture action:

> An important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings. This delay can favor both the claimant and the Government. In many cases, the Government's entitlement to the property is clear, and the claimant's only prospect for reacquiring the property is that the Secretary will favorably exercise his discretion and allow remission or mitigation. If the Government were forced to initiate judicial proceedings without regard to administrative proceedings, the claimant would lose this benefit. Further, administrative proceedings are less formal and expensive than judicial forfeiture proceedings. Given the great percentage of successful petitions, allowing the Government to wait for action on administrative petitions eliminates unnecessary and burdensome court proceedings. Finally, a system whereby the judicial proceeding occurs after administrative action spares litigants and the Government from the burden of simultaneously participating in two forums.

*$8,850*, 461 U.S. at 566 (citations omitted).

Consistent with the Supreme Court's analysis in *$8,850*, we believe that § 924(d)(1) does not mandate that judicial actions be brought within 120 days of the seizure, as long as an administrative proceeding has been brought within that timeframe. As the Court suggests in *$8,850*, permitting the government to await a decision on the administrative forfeiture proceeding protects the courts from overly

burdensome litigation, conserves economic resources, and preserves a claimant's opportunity for remission or mitigation. *See id.* If parties were required to bring both proceedings within the 120-day period, a claimant awaiting a response on the administrative action and eagerly anticipating remission may have to forego his chance to challenge the forfeiture in a court of law. *See id.* In a situation where a statutory provision is ambiguous, our "perception that a particular result would be unreasonable" must play an important role in our interpretation process. *Asphalt Prods. Co.*, 482 U.S. at 121. Thus, after considering the "the language and design of the statute as a whole," *Meyers*, 952 F.2d at 918, and after "making every effort . . . to interpret a provision in a manner" consistent with the rest of the statute, *Cafarelli*, 226 F.3d at 499, we conclude that § 924(d)(1)'s ambiguous statutory language "any action or proceeding" should not be interpreted to mean "every" but rather "either" a judicial action or an administrative proceeding. Furthermore, we agree that because the administrative forfeiture proceeding was brought within 120 days, a judicial forfeiture action brought within five years, as provided in § 1621, was within the statute of limitations. This interpretation allows for consideration of the statute's language in its entirety, gives meaning to Internal Revenue Code provisions, and fosters the favored status of administrative actions.

Short criticizes the district court's reliance on *Twelve Firearms* as error because that decision considered § 924(d)(1)'s language ambiguous but nevertheless failed to consider legislative history. Short, citing *Fourteen Various Firearms*, posits that the legislative history supports his argument that both administrative and judicial proceedings must commence within the 120-day period. The *Fourteen Various Firearms* court noted that the sponsor of the Firearms Owners' Protection Act ("FOPA"), the statute creating § 924(d)(1), criticized its alternative, the Hughes bill, because "'[the latter did] not require an agency to bring judicial actions within 120 days, or any other limit, of a seizure.'"

889 F. Supp. at 877 (citing 132 Cong. Rec. H1652 (April 9, 1986)). What Short fails to realize is that this court has stated that legislative history is used when "textual analysis is unclear, or leads to ambiguous or unreasonable results." *The Limited, Inc.*, 286 F.3d at 332. Although the word "any" in § 924(d)(1) is ambiguous, the textual analysis of the entire statute combined with an assessment of the statute's structure leads us to a reasonable, not unreasonable, result: one that upholds the favored status of administrative proceedings and allows for judicial proceedings still to be brought after an administrative forfeiture has failed. Moreover, as previous courts have indicated, "if Congress had intended that the time limit provided in § 924(d)(1) should *always* apply to the filing of a judicial complaint for firearms, even when an administrative proceeding has also been initiated, it could have easily specified so in the statute." *Twelve Firearms*, 16 F. Supp. 2d at 741. Short's reliance on one stray comment in the legislative history cannot override the statute's structure, meaning, and purpose; Congress votes on the statute in its entirety, not on the House sponsor's comments alone. Moreover, the sponsor's comment is not at odds with our interpretation. The comment's emphasis is on the timing of judicial proceedings, recognizing that such proceedings need some time limit. Our holding today also recognizes FOPA's concern with bringing timely proceedings and determines that the 120-day limit will apply to judicial proceedings when no administrative forfeiture action was brought to toll the 120-day requirement.

On a final note, Short argues that the five-year statute of limitations in § 1621, when properly applied, runs from the date the alleged offense was discovered, not the date of seizure as in § 924(d)(1). Short then proceeds to argue, without citing any authority, that an earlier date of discovery should apply in his case because the government knew he had a felony conviction for possession of firearms in 1979 and was aware that he possessed firearms in advance of the execution of the search warrant. Short suggests that because he openly purchased his firearms through registered dealers,

the government was constructively aware that he had these weapons well before August 20, 1994. The record is entirely void of any evidence in support of this argument. Moreover, Short waived this argument by failing to raise it before the district court. This court has repeatedly held that it "will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) (quotation omitted). Here, our decision not to address Short's factually and legally unsupported argument does not result in a miscarriage of justice.

## B. Due Process

Short next alleges that the government's delay in bringing the judicial forfeiture action violated his right to due process. He relies on the government's failure to give any reason for its five-year delay after he asserted a right to the property in 1994. The government, on the other hand, argues that it was justified in waiting for a decision on Short's remission petition and that it properly awaited the termination of Short's criminal proceedings. The government concludes that even if the remaining two-year delay was not justified, it did not rise to the level of a due process violation. The district court, citing *$8,850*, found Short's due process claim to be "devoid of merit." J.A. at 40 (Dist. Ct. Or.). We review de novo a district court's legal conclusions as to whether a claimant's constitutional rights were violated. *See Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999).

As we stated previously, the firearms at issue were seized on August 26, 1994. That same year, Short filed his petition for remission, asserting his right to the firearms, which was denied. The government did not begin its judicial forfeiture action until August 20, 1999, after nearly five years had elapsed since seizure. Although Short's criminal trial was pending during a portion of this period, once the Supreme Court denied his petition for certiorari on June 27, 1997, those proceedings came to a close. After the criminal trial ended,

and thus the need for the firearms as evidence of the crime had ceased, the government delayed another two years before instituting judicial forfeiture proceedings.

The balancing test in *Barker v. Wingo*, 407 U.S. 514 (1972), provides the framework that we use to determine when the government's delay in bringing a judicial forfeiture action violates the Fifth Amendment right against deprivation of property without due process. *$8,850*, 461 U.S. at 564. The original test, applied in *Barker* when the government's delay abridged the right to a speedy trial, weighs four factors: the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant. *Barker*, 407 U.S. at 530. The Court has clarified that none of these factors is "necessary" or "sufficient," but rather, they are to be used as guides in balancing the interests of the claimant against those of the government. *$8,850*, 461 U.S. at 565. The Court has instructed the lower courts to apply the test "on an *ad hoc* basis" to determine if the "flexible requirements of due process have been met." *Id.* at 564-65 (internal quotations omitted). Recognizing that the test was not designed for scientific precision, the Court provided some guidance: "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530.

In the instant case, because we believe the delay's length is both substantial and presumptively prejudicial, we engage in an analysis of the remaining three factors. *See id.* With respect to the reason for the delay, the government has proffered ample justification for its initial three-year delay in its appellate brief. First, the government waited until a determination was made on Short's petition for remission. *See $8,850*, 461 U.S. at 566 ("An important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings."). Second, the

government properly awaited a result in Short's criminal proceedings. *See id.* at 567. ("Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings."). We note that these justifications adequately cover the initial three-year delay, but we emphasize that the government waited an additional two years before initiating proceedings for which it has offered no justification.

This leads us to the third factor: Short's assertion of his right to the property. Soon after the warrant was executed, Short filed a petition for remission but he never requested the initiation of a judicial forfeiture action. *See generally id.* at 569 (noting a claimant's power to "trigger rapid filing of a forfeiture action," and that failure to use the available remedies "can be taken as some indication that [the claimant] did not desire an early judicial hearing"). In addition, as the government notes, Short could have moved for the return of his seized property under Federal Rule of Criminal Procedure 41(e). Fed. R. Crim. P. 41(e) ("A person aggrieved by . . . the deprivation of property, may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property."). Recognizing Short's deliberate inactivity, we, nonetheless, must consider the traditional leniency extended to pro se litigants. *See generally Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (quotation omitted)). As indicated in the record, Short's sole attempt to regain his property consisted of a letter he filed shortly after the seizure which was interpreted as a petition for remission and was subsequently denied. After its denial, Short neglected to pursue any of the myriad options available to him. Taking our cue from the Supreme Court's decision in *$8,850*, we conclude that Short's failure to pursue his property "can be taken as some indication that [he] did not desire an early judicial hearing." *$8,850*, 461 U.S. at 569.

The final factor we consider is what prejudice Short suffered by virtue of the delay. As the Court stated in *$8,850*: "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850*, 461 U.S. at 569. Short has failed to provide this court with any evidence of how the delay in bringing the judicial proceeding has prejudiced his defense. Accordingly, we must conclude that no such prejudice exists.

Considering the mix of factors presented in this case, we determine that the district court correctly found no due process violation. Admittedly, the government provided only partial justification for the delay by failing to account for the additional two-year delay after the criminal trial was concluded. In the end, however, irrespective of Short's then-pro-se status, we are persuaded that the balancing of factors prohibits a finding that Short's due process rights were violated. We cannot construe this as a due process violation because Short has failed to make more than a single, casual demand for the return of his property and he has failed to show how he was prejudiced by the delay in bringing the judicial forfeiture action. *See id.*

Short also alleges that the six-month delay in service of process violated his due process rights. The government filed this forfeiture action against the firearms on August 20, 1999, but did not serve Short with process within 120 days as required by Federal Rule of Civil Procedure 4(m). It was not until February of 2000 that Short received a copy of the complaint for the judicial forfeiture action. Federal Rule of Civil Procedure 4(m) states in pertinent part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that

if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Although the rule by its express language provides that the court "shall" dismiss an action when service is not effected within 120 days, it also provides some flexibility in that it allows a court to choose not to dismiss but rather to extend the service time when good cause is shown.

In the present case, the district court requested the government to show cause as to why it did not serve Short within the allotted time period. In response to the court's order to show cause, the government admitted that a "miscommunication" behind the scenes at BATF resulted in the failure to serve Short. Although the district court did not expressly indicate that it chose to "extend the time for service for an appropriate period," it is obvious that it so chose because it did not dismiss the case without prejudice but instead allowed the case to proceed after the government's response to the show cause order. The district court had two equally permissible options, and it was not error for the district court to choose one over the other.

## C. Pro Se Litigants and Summary Judgment

Short's final argument on appeal alleges that the district court erred in failing to alert him to the consequences of a summary judgment motion and his responsibilities to respond. Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When the moving party files a motion for summary judgment, the non moving party cannot "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts

showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted). Short argues that, because he was proceeding pro se after being denied his request for appointed counsel, he was unaware of the need to file affidavits and other responsive papers in opposition to the government's motion to avoid summary judgment against him. In support of his argument, he cites authority from the Ninth and Eleventh Circuits: *Rand v. Rowland*, 113 F.3d 1520, 1522-23 (9th Cir. 1997), and *United States v. One Colt Python .357 Caliber Revolver*, 845 F.2d 287 (11th Cir. 1988).

The majority of circuits have held that a pro se litigant[2] is entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule. *See, e.g.*, *Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988) (reaffirming its agreement with the rule providing pro se prisoners with notice of the summary judgment requirements); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (holding that "in all fairness" a pro se litigant, who is unaware of his obligation to respond, should not have summary judgment entered against him); *One Colt Python .357 Cal. Revolver*, 845 F.2d at 289 ("A motion for summary judgment should only be granted against a litigant without counsel if the court gives clear notice of the need to file affidavits or other responsive materials and of the consequences of default."); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) ("[W]e think it appropriate to lay down a general rule that a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment."); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (requiring that the "plaintiff be

---

[2]Some circuits extend this leniency to all pro se litigants, while others limit the leniency to prisoner pro se litigants. *Compare Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (extending this special treatment to nonprisoner pro se litigants), *with Jacobsen v. Filler*, 790 F.2d 1362, 1364 & n.4 (9th Cir. 1986) (refusing to extend the rule to nonprisoner pro se litigants).

advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him"); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968) (holding that "at a bare minimum" the district court was required to provide a pro se prisoner with fair notice of the summary judgment rule requirements); *see also Jaxon*, 773 F.2d at 1140 (citing some of the above listed cases to support its holding that the district court abused its discretion by failing to provide the plaintiff, pro se civil litigant, "a meaningful opportunity to remedy the obvious defects in his summary judgment materials" (quotation omitted)). However, this court clearly has held that no such rule providing "special assistance" exists with respect to nonprisoner pro se litigants. *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). The *Brock* court, relying on the rationale of the Ninth Circuit, stated that prohibiting special treatment for nonprisoner pro se litigants was only fair because parties choosing to have counsel "must bear the risk of their attorney's mistakes," and thus, "a 'litigant who chooses *himself* as a legal representative should be treated no differently.'" *Id.* (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986)). However, this court specifically noted in *Brock* that "[t]his approach was carefully held not to be applicable to prisoners proceeding without counsel since they often have little choice in proceeding on their own behalf." *Id.; but see Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) (deciding that Rule 56 was satisfied where the defendant prisoner's typewritten form complaint was verified and has "the same force and effect as an affidavit"). While the *Williams* court stated that this circuit has "no authority . . . for the proposition that a district court must advise a *pro se* prisoner of his right to file counter-affidavits or other responsive material or that he must be alerted to the fact that his failure to so respond with such material might result in entry of summary judgment against him," it failed to cite *Brock*, which appears to reach the opposite conclusion. *Williams*, 981 F.2d at 903.

The difficult question in this case is whether to consider Short a prisoner pro se litigant or a nonprisoner pro se litigant. At the time the judicial forfeiture action was brought, Short remained incarcerated with "little choice in proceeding on [his] own behalf," *Brock*, 840 F.2d at 343, but when the motion for summary judgment was filed, Short had been released. Considering the rationale behind this special treatment, it makes sense to afford Short the protection of a prisoner pro se litigant because he was a prisoner when the initial forfeiture action was filed, and even after his release he still was unsuccessful in securing counsel. Nonetheless, there is no need for us to address this question because any error here is harmless. Short indicates that he did not respond to the government's motion and that he has "meritorious arguments," but he fails to offer us even a hint of what these arguments would have been. Thus, we conclude that any affidavits or responsive papers that Short would have filed would not have raised genuine issues of material fact and would not have altered the decision to grant summary judgment.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of the government's motion for summary judgment.