NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0495n.06

No. 12-3575

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 16, 2013*

DEBORAH S. HUNT, Clerk

DONALD K. BASS,                                   )
                                                  )    ON  APPEAL  FROM  THE
    *Plaintiff-Appellant*,                         )    UNITED  STATES  DISTRICT
                                                  )    COURT FOR THE NORTHERN
v.                                                )    DISTRICT OF OHIO
                                                  )
WENDY'S OF DOWNTOWN, INC.,                         )    **O P I N I O N**
                                                  )
    *Defendant-Appellee*.                          )

BEFORE:      KEITH, COLE and ROGERS, Circuit Judges.

COLE, Circuit Judge.  Plaintiff-Appellant Donald Bass, proceeding pro se, sued Defendant-Appellee Wendy's of Downtown ("Wendy's"), alleging that Wendy's violated the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2001 *et seq*., by disclosing polygraph results to the Ohio Civil Rights Commission and by refusing to promote him on the basis of those results.  The district court dismissed Bass's claims on summary judgment and Bass appealed.  For the following reasons, we affirm the judgment of the district court.

I.

Bass was employed by Wendy's from the late 1990s until September 2010.  Though Bass was initially a full-time employee, he began working part-time in 2002 after taking full-time employment at another restaurant.  In July 2007, a cash deposit went missing at Wendy's.  Wendy's asked Bass and another employee to submit to a polygraph examination as part of an investigation into the

disappearance of the money. They both consented. The other employee passed the examination; Bass failed. Bass continued to work for Wendy's for another two and a half years.

In February 2010, Wendy's posted two full-time manager positions. Bass expressed interest in these positions, but was not considered. A few months later, a female colleague accused Bass of inappropriately touching her. A security tape confirmed her claim, and Bass was given a choice of either resigning from Wendy's or being fired. Bass resigned.

Bass and Wendy's had a tumultuous relationship. By the time he resigned, Bass had accumulated twenty-two corrective notices from Wendy's for tardiness, food safety violations, and other issues. Wendy's, for its part, was not blameless; the management at Wendy's allowed employees to refer to Bass in derogatory terms and joked about Bass being a thief.

Two months after Bass's resignation, Bass filed a complaint with the Ohio Civil Rights Commission ("OCRC") alleging that Wendy's's decision not to consider him for the manager positions in February 2010 was age discrimination and retaliation for previously filed allegations of discrimination. Wendy's filed a response with the OCRC, in which it disclosed that Bass had failed his polygraph test:

> Don [Bass] was not considered as a viable candidate for the General Manager and Assistant Manager positions that were advertised via Craigslist in February 2010. The reason Don was not considered was due to his employment history with Wendy's. Don's employment history includes the following:
> 22 Corrective Action Notices have been written on Don . . . . Seven while being employed full time for approximately 4½ years and 15 notices while employed part time for the past 8½ years. These notices range from security violations, food safety violations, tardiness issues, cost control problems, etc.
> *In July 2007, there was a missing bank deposit from the restaurant Don was working at. There were two managers that had access to the deposit. Of the two managers, the other manager passed a polygraph and Don failed his polygraph test. This*

> *created a trust issue. If this is relevant, we have documentation of Don's failed polygraph.*
> Don has been defiant and insubordinate to his superiors over the past couple of years, not following specific instructions and in some cases, disregarding what was told to him. He also began to refuse to sign written Corrective Action Notices after talking to his attorney.

*Bass v. Wendy's of Downtown, Inc.*, No. 11-CV-940, 2012 WL 1552264, at *2 (N.D. Ohio May 1, 2012) (quoting Wendy's OCRC Position Statement) (emphasis in original).

Bass subsequently filed suit in the United States District Court for the Northern District of Ohio, alleging that: (1) Wendy's had unlawfully disclosed the results of his polygraph examination, in violation of 29 U.S.C. § 2008, and (2) Wendy's had unlawfully discriminated against him on the basis of his failed polygraph examination, in violation of 29 U.S.C. § 2002(3)(B).

The district court granted summary judgment in favor of Wendy's on the first claim because Bass did not show or even allege that he had suffered any damages as a result of the unlawful disclosure. With regard to Bass's second claim, the district court, following the Fourth Circuit, held that EPPA § 2002(3)(B) claims should be analyzed under the familiar burden-shifting framework from Title VII and *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion). Although the court held that Wendy's clearly took Bass's polygraph results into account in their decision not to consider him for a promotion, the court concluded that Wendy's submitted sufficient evidence to demonstrate it would not have considered him for the position irrespective of the polygraph. Therefore, under the *Price Waterhouse* framework, the district court held that Wendy's was entitled to summary judgment.

Bass brought a timely appeal.

II.

This Court reviews an order granting summary judgment de novo. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, we view the evidence and draw all reasonable inferences in favor of the non-moving party. *Tysinger*, 463 F.3d at 572.

Although prisoner pro se litigants are given limited special aid and consideration, we have made clear that non-prisoner pro se litigants are treated no differently than litigants who choose representation by attorneys. *Brock v. Henershott*, 840 F.2d 339, 343 (6th Cir. 1988) ("When a [non-prisoner] chooses to represent himself, he should expect no special treatment which prefers him over others who are represented by attorneys."); *United States v. Ninety Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) ("The majority of circuits have held that a pro se litigant is entitled to notice of the consequence of a summary judgment motion . . . However, this court clearly has held that no such rule providing 'special assistance' exists with respect to nonprisoner pro se litigants."). Therefore, although Bass brings this case pro se, we provide no special consideration for his case on that basis. *Id*.

Bass appeals the district court's grant of summary judgment in favor of Wendy's on his two EPPA claims: (1) that Wendy's's disclosure of his polygraph results was unlawful and (2) that Wendy's's reliance on the polygraph results in its failure to promote him was unlawful. We address these claims in turn.

A.

Bass alleges that Wendy's violated EPPA § 2008 by disclosing the results of his polygraph examination to the OCRC. The district court granted summary judgment for Wendy's holding that although this disclosure may have violated § 2008 Bass had not produced any evidence that the disclosure had harmed him. Therefore, he was not entitled to damages under the statute.

Section 2008 states that "[a] person, other than the examinee, may not disclose information obtained during a polygraph test . . . ." 29 U.S.C. § 2008(a). Limited exceptions are made for employers but none are applicable here. *Id* at § 2008(b). Under EPPA § 2005, damages for a violation of the EPPA include "legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits."

Bass has provided no evidence of damages resulting from the disclosure of his polygraph examination. Although he has alleged five million dollars of damages in his complaint, he has shown no evidence of harm or provided any basis upon which to justify monetary damages in any amount. While employers who violate the EPPA are subject to various types of damages under § 2005, Bass has not cited any particular material in the record demonstrating that he was harmed by the disclosure and entitled to relief. *See* Fed. R. Civ. P. 56(c)(1)(A). Furthermore, Bass has provided no support for his argument on appeal that the judgment of the district court should be reversed; instead, his reply brief merely states his conclusion that "he was harmed by Defendant-Appellee's . . . disclosure of his failed polygraph test." Therefore, we affirm the judgment of the district court with regard to Bass's polygraph disclosure claim.

B.

In Wendy's Position Statement to the OCRC, it stated that one "reason [Bass] was not considered as a viable candidate for the General Manager and Assistant Manager positions" was that "[Bass] failed his polygraph test." Bass argues that this was not only an unlawful disclosure under the EPPA but also a violation of EPPA § 2002(3)(B), which makes it "unlawful for any employer engaged in or affecting commerce . . . to discharge, discipline, discriminate against in any manner, or deny employment or promotion to . . . any employee or prospective employee on the basis of the results of any lie detector test . . . ." 29 U.S.C § 2002(3)(B). Wendy's responds that although it did take the lie detector test into account when it did not promote Bass there were many other factors—such as Bass's twenty-two corrective action notices and his repeated insubordination—that also led to Bass not being considered for the promotion. Even if Wendy's had not known about the lie detector test, it argues, Bass would not have been promoted.

The preliminary question facing the Court is what test to apply to this portion of the appeal. The district court, following the Fourth Circuit in *Worden v. SunTrust Banks, Inc.,* 549 F.3d 334 (4th Cir. 2008), applied the mixed-motives framework of *Price Waterhouse v. Hopkins* and granted summary judgment in favor of Wendy's. This Circuit, however, has yet to determine the appropriate analysis for claims made under EPPA § 2002(3)(B). The original *Price Waterhouse* opinion is a Title VII employment discrimination analysis. 490 U.S. at 258. The *Price Waterhouse* framework has since been applied to a multiplicity of mixed-motive employment discrimination cases, including those arising under the Age Discrimination Employment Act ("ADEA"), the Uniformed Services and Reemployment Rights Act of 1994 and Title VII's retaliation provision. *See Worden*, 549 F.3d

at 342 (discussing the many statutes to which the *Price Waterhouse* test has been extended) (collecting cases). The Supreme Court, however, has since limited the reach of *Price Waterhouse* and cautioned that courts must not "apply rules applicable under one statute to a different statute without careful and critical examination." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009). Recently, we held that: "No matter the shared goals and methods of two laws . . . we should not apply the substantive causation standards of one anti-discrimination statute to other anti-discrimination statutes when Congress uses distinct language to describe the two standards." *Lewis v. Humboldt Acquisition Corporation, Inc.*, 681 F.3d 312, 318-19 (6th Cir. 2012) (interpreting *Gross*) (en banc).

Although it is not clear that *Price Waterhouse* is necessarily the appropriate test, the *Price Waterhouse* framework places a relatively light burden on plaintiffs and alternative tests would thus not aid—indeed they would likely harm—Bass's case. Bass does not argue otherwise.

Under the *Price Waterhouse* framework, a plaintiff first must offer evidence that the discriminatory factor—in this case the polygraph—was a motivating factor in the adverse employment action—in this case failure to consider Bass for employment. 490 U.S. at 258. Once the plaintiff has made a prima facie case, the employer can avoid liability by proving that it would have made the same decision in the absence of the discriminatory motivation. *Id.*

Based on the record, Bass can make out a prima facie case by demonstrating that the polygraph was a motivating factor—Wendy's says as much in their Position Statement to the OCRC. Nevertheless, as the district court held, "[o]n this record, it is abundantly clear that Wendy's would not have promoted Bass . . . even if it was unaware of Bass's failed polygraph." The evidence of

Bass's prior problems at work is overwhelming. For example, Wendy's's Area Director, William Kobettisch, testified in his affidavit that Bass was not promoted due in part to "22 corrective action notices involving matters of security violations, food safety violations, cost control issues, and tardiness issues," and that Bass would not have been promoted even if he had not taken the polygraph. Bass has presented no evidence disputing any aspect of this affidavit. Wendy's also asserts that Bass was a "defiant and insubordinate" employee, that he refused to sign corrective action notices, and would not "follow specific instructions" when given directions by a superior.

Because the *Price Waterhouse* framework is the lowest burden this Court could apply to Bass's case, and because no reasonable juror would find that Wendy's would have promoted Bass had he not failed the polygraph, we affirm the district court's grant of summary judgment on Bass's failure-to-promote claim.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.