UNITED STATES of America,
Plaintiff,

v.

FIFTY–TWO FIREARMS, Defendant.

No. 6:04CV1658ORL18JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 10, 2005.

Daniel W. Eckhart, U.S. Attorney's Office, Orlando, FL, for Plaintiff.

## ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration without oral argument on the following motion:

> **MOTION: MOTION TO RECONSID-ER ORDER DENYING WARRANT OF ARREST FOR 52 FIREARMS (Docket No. 7)**
>
> **FILED: November 29, 2004**
>
> **THEREON** it is **ORDERED** that the motion to reconsider is **GRANTED.** On reconsideration, however, the result stands.

## I. *THE ISSUES*

Pursuant to a search warrant executed on April 7, 2004, the government seized fifty-two firearms from the residence of Jack E. Holt, a citizen.[1] The government asks this Court to order those firearms arrested in rem, condemned, and civilly forfeited to the government. *See* Verified Complaint for Forfeiture In Rem, Docket No. 1 at 8—9; Amended Verified Com-

plaint for Forfeiture In Rem, Docket No. 6 at 11. The government argues that the fifty-two firearms are subject to forfeiture under 18 U.S.C. §§ 924(d)(1) and 983 because the firearms were involved in violations of the Gun Control Act—first, engaging in a firearms business without a license in violation of 18 U.S.C. § 922(a)(1), and second, selling a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1). *See* Docket No. 6 at 1, 9—10.

This Court previously denied without prejudice the government's petition asking the Clerk to issue warrants of arrest in rem and summonses for the fifty-two firearms.[2] Docket Nos. 3, 5. The government now asks the Court—without the benefit of a brief or memorandum of law as required by Local Rule 3.01(a)—to reconsider its prior denial on two grounds: 1.) the amended verified complaint shows probable cause for the issuance of the arrest warrants in rem; and 2.) the government filed the civil complaint in this case in a timely manner. Docket No. 7. Specifically, the government asks this Court to recon-

---

**1.** According a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives who swore to the amended complaint, the seized firearms were "similar to" and "consistent with" the types of firearms that agents saw Holt selling at the Volusia County Flea Market without a firearms license. Docket No. 6 at 9.

**2.** This Court's order of November 17, 2004 [Docket No. 5] reads:

> ORDER denying without prejudice [Docket No. 3], the government's motion for issuance of a warrant of arrest in rem of 52 firearms. The petition and verified complaint, standing alone, are insufficient to show probable cause to believe that the 52 firearms are forfeitable under 18 U.S.C. section 924(d)(1). First, the government filed this forfeiture action on November 12, 2004, more than 120 days after seizing the guns on April 7, 2004. See 18 U.S.C. section 924(d)(1) (requiring commencement of forfeiture action within 120 days of sei-

zure). Second, the petition and verified complaint state insufficient facts to establish probable cause to believe that Jack Holt committed a predicate crime, and that the firearms are not subject to being returned. See 18 U.S.C. section 924(d)(1) (requiring return of firearms upon acquittal of owner or dismissal of charges). The government cannot expect this Court to stumble around the Clerk's unindexed sealed vault on the chance that it might find an affidavit supporting a search warrant issued by the Honorable David A. Baker on April 6, 2004 [In re Search of Jack Holt etc., Case No. 04–2046–02], particularly when the government has certified that no such record exists. See Docket No. 2 (certifying that this "forfeiture action is not related to pending or closed civil or criminal case(s) previously filed in this Court, or any other Federal or State court, or administrative agency"). The Clerk shall mail a copy of this order to Jack Holt, 5280 Michigan Avenue, Sanford, FL 32771.

sider its ruling that this civil forfeiture proceeding is untimely because it was not commenced within 120 days of the seizure as required by 18 U.S.C. § 924(d)(1).[3]

The government filed its motion to reconsider *ex parte*, so the motion is unopposed. The Court has not yet arrested the in rem property (the defendant firearms), and the government's verified amended complaint makes no in personam claim against individuals. Also, the government has not yet served process on any individual who may have an interest in the firearms.

## II. *THE LAW*

### A. The Civil Forfeiture of Firearms

The civil forfeiture statutes of the United States permit the forfeiture of firearms in three situations relevant to this case. First, any firearm involved in or used in any wilful violation of any criminal law of the United States is subject to seizure and forfeiture where such intent (wilfulness) is demonstrated by clear and convincing evidence. 18 U.S.C. § 924(d)(1). The criminal laws of the United States include 18 U.S.C. § 922(d)(1) (selling a firearm to a convicted felon) and 18 U.S.C. § 922(a)(1) (engaging in a firearms business without a license). Second, a firearm is subject to forfeiture if it is intended to be used in a violation of 18 U.S.C. § 922(d)(1) (selling a firearm to a convicted felon) where such intent is demonstrated by clear and convincing evidence, and where the transferor intends to use the firearm in such an offense. *See* 18 U.S.C. §§ 924(d)(1) and 924(d)(3)(D). Third, a firearm also is subject to forfeiture if it is intended to be used

in a violation of 18 U.S.C. § 922(a)(1) (engaging in a firearms business without a license) where such intent is demonstrated by clear and convincing evidence, and where the firearm intended to be used in such an offense is involved in a pattern of activities which includes a violation of 18 U.S.C. § 922(a)(1) (engaging in a firearms business without a license). *See* 18 U.S.C. §§ 924(d)(1) and 924(d)(3)(C).

Congress has placed limits on the federal courts by enacting general rules for civil forfeiture proceedings, including proceedings to forfeit firearms. *See* 18 U.S.C. § 983 (applicable to "non-judicial" or administrative civil forfeiture proceedings commenced under a civil forfeiture statute).[4] Pursuant to rule-making authority, the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ["BATF"] also has promulgated regulations for administrative forfeiture proceedings. *See generally*, 27 C.F.R. Part 72; 27 C.F.R. § 478.152. Under § 983, an administrative agency such as BATF may commence an administrative forfeiture proceeding, and send notice to interested parties no more than 60 days after a seizure.[5] 18 U.S.C. § 983(a)(1)(A)(i); *see also* 27 C.F.R. § 72.22. The government may instead file a civil judicial forfeiture action against the property in the United States District Court within 60 days, and provide notice of that action. 18 U.S.C. § 983(a)(1)(A)(ii).

A "non-judicial" or administrative forfeiture proceeding may precede a "judicial" forfeiture action. A person claiming property seized in an administrative civil forfei-

---

**3.** Congress requires that "[a]ny action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure." 18 U.S.C. § 924(d)(1).

**4.** The statute for the civil forfeiture of laundered crime proceeds makes no reference to

the forfeiture of firearms, and is inapplicable. *See* 18 U.S.C. § 981.

**5.** Under very limited circumstances, a supervisory official may extend the period for sending notice for not more than 30 days. 18 U.S.C. § 983(a)(1)(B).

ture proceeding may file a verified claim with the agency. 18 U.S.C. § 983(a)(2)(A); *see also* 27 C.F.R. § 72.22(b). The government must then file a complaint for forfeiture in the United States District Court in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims no later than 90 days after a claim has been filed with the administrative agency. 18 U.S.C. § 983(a)(3)(A); Supplemental Rules A and C(1)(b) (applicable to statutory condemnation proceedings analogous to maritime actions in rem).

Prior to seizure by the Court, a judicial officer reviews the verified complaint without notice to the parties, and determines whether probable cause exists for an action in rem. Local Admiralty Rule 7.03(b)(1). If the conditions for an in rem action appear to exist, the Court issues an order for the arrest of the property. *See* Supplemental Rule C(3)(a)(ii)(A); Local Admiralty Rule 7.03(b)(1); *see also* Forms MDF 702 and MDF 703 in Appendix to Local Admiralty Rules. A person who asserts an interest in the property must file a verified claim in the district court identifying his interest within ten days of completion of service of the complaint, and must answer within twenty days after filing his claim. Supplemental Rule C(6)(a)(i); Local Admiralty Rule 7.03(f).

Congress has imposed some additional limits to protect firearm owners. Only those firearms particularly named and individually identified as involved in or used in a violation of the federal criminal laws are subject to seizure, forfeiture, and dis-

position where such intent (wilfulness or intent to use firearm in the offense) is demonstrated by clear and convincing evidence. 18 U.S.C. § 924(d)(2)(C), *accord,* 27 C.F.R. § 478.152(b). The government must return the seized firearms to the owner "forthright" upon the involuntary dismissal of charges against the owner or upon his acquittal. 18 U.S.C. § 924(d)(1), *accord,* 27 C.F.R. § 72.21(c). Any action or proceeding for the forfeiture of the firearms must be commenced within 120 days of the seizure.[6] 18 U.S.C. § 924(d)(1); *accord,* 27 C.F.R. § 72.21(b); 27 C.F.R. § 478.152(a).

## B. The Standard for Interpreting Statutes

In construing a statute, the district court first looks to the plain language of the statute. *See Albernaz v. United States,* 450 U.S. 333, 336, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *accord, United States v. Veal,* 153 F.3d 1233, 1245 (11th Cir.1998). Words are interpreted with their ordinary and plain meaning because the Courts assume that Congress uses words in a statute as they are commonly understood. *See Veal,* 153 F.3d at 1245; *United States v. McLeod,* 53 F.3d 322, 324 (11th Cir.1995).

Review of legislative history is unnecessary "unless a statute is inescapably ambiguous." *Veal,* 153 F.3d at 1245; *Solis–Ramirez v. U.S. Department of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985) (per curiam); *accord, United States v. Rush,* 874 F.2d 1513, 1514 (11th Cir.1989)

---

6. The relevant part of § 924(d)(1) (bold emphasis supplied), in context, provides:

*Provided,* That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be

returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. **Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.**

(where statutory language is clear, the Court will not create an ambiguity with legislative history). The plain language of the statute is conclusive as clearly expressing legislative intent unless the resulting application would be "absurd" or "internal inconsistencies" must be resolved. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Veal,* 153 F.3d at 1245. When statutory language is clear and unambiguous, it controls interpretation "absent a legislative intent to the contrary." *United States v. Grigsby,* 111 F.3d 806, 816 (11th Cir.1997). When a court does consider congressional intent, however, it may consider titles and section headings as meaningful when construing the whole statute. *House v. Commissioner of Internal Revenue,* 453 F.2d 982 (5th Cir.1972).

## III. APPLICATION

### A. Probable Cause

#### 1. Sale of Firearm to a Convicted Felon

According to Eleventh Circuit Pattern Jury Instruction No. 34.5, the offense of knowingly selling a firearm to a convicted felon, 18 U.S.C. § 922(d)(1), requires proof of the following elements beyond a reasonable doubt: 1.) that the defendant sold the firearm described in the indictment, at or about the time alleged; 2.) that the person who bought the firearm had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense; and 3.) that the defendant acted with knowledge or with reasonable cause to believe that such person had been so convicted. To have "reasonable cause to believe" that someone is a convicted felon means to have knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to reasonably conclude that the other person was in fact a convicted felon.

Eleventh Circuit Pattern Jury Instruction No. 34.5.

The term "crime punishable by imprisonment for a term exceeding one year" does not include any federal or state offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or any state offense classified as a misdemeanor and punishable by a term of imprisonment of two years of less. What constitutes a conviction of such a crime is determined in accordance with the law of the jurisdiction in which the proceedings are held. 18 U.S.C. § 921(a)(20).

This Court has reviewed the amended verified complaint for forfeiture in rem to determine whether probable cause exists for an action in rem against some or all of the 52 firearms either 1.) because they were involved in or used in a wilful violation of 18 U.S.C. § 922(d)(1) (selling a firearm to a convicted felon); or 2.) because they were intended to be used in a violation of 18 U.S.C. § 922(d)(1) (selling a firearm to a convicted felon) and the transferor intends to use the firearms in such offense.

█ The amended verified complaint fails to show probable cause as to all elements of the offense. First, there is no evidence that Holt sold (or attempted to sell) a firearm described in the amended verified complaint to a convicted felon. According to the complaint, the undercover felon "purchased one Mossberg, Model 500A, 12 gauge, pistol grip shotgun and one box of 12 ga. ammunition from Holt." Docket No. 6 at 6. The amended verified complaint, however, does not seek to forfeit a Mossberg 12 gauge shotgun or ammunition. Even if the Court were willing to assume that the 52 guns listed in the amended verified complaint are somehow "similar to" and "consistent with" the Mossberg 12 gauge shotgun that the

agents saw Holt sell to a convicted felon at the Volusia County Flea Market, there is insufficient cause to believe that Holt also intended to sell some or all of the 52 guns to a convicted felon.

Second, the amended verified complaint stops short of providing probable cause to believe that the informant who bought the firearm had in fact been convicted of a "felony" as Congress has narrowly defined that term for forfeiture purposes. The complaint alleges simply that the informant "was a convicted felon." Docket No. 6 at 6. The complaint says nothing about the type of felony for which he was convicted, or the manner of conviction. It may be that the informant "was a convicted felon" because he was adjudicated guilty on a plea of nolo contendere to a charge that he engaged in unfair trade practices, for example—a felony conviction that is insufficient for conviction and for forfeiture. The conditions for an in rem action do not appear to exist on this ground, so the Court declines to issue an order for the arrest of the 52 firearms.

### 2. Dealing in Firearms Without a License

According to Eleventh Circuit Pattern Jury Instruction No. 34.1, the offense of dealing in firearms without a federal license, 18 U.S.C. § 922(a)(1), requires proof of the following elements beyond a reasonable doubt: 1.) that the defendant engaged in the business of dealing in firearms; 2.) that the defendant engaged in such business without a license issued under federal law; and 3.) that the defendant did so knowingly and wilfully. A person is "engaged in the business of selling firearms at wholesale or retail" if that person devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. 18 U.S.C. § 921(a)(21)(C). Such person does

not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of that person's personal collection of firearms.

The term "dealer" means any person engaged in the business of selling firearms at wholesale or retail regardless of whether the selling of firearms is the defendant's principal business or job. 18 U.S.C. § 921(a)(11). The term "with the principal objective of livelihood and profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain (whether one actually earns a profit or not) as opposed to other intents, such as improving or liquidating a personal firearms collection. 18 U.S.C. § 922(a)(22). However, proof of profit motive is not required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. *Id.*; Eleventh Circuit Pattern Jury Instruction No. 34.1. The term "wilfully" means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law. Eleventh Circuit Pattern Jury Instruction No. 9.1.

■ There is probable cause to believe that the 52 firearms are subject to civil forfeiture because Holt was dealing in firearms without a federal license in violation of 18 U.S.C. § 922(a)(1). There is probable cause to believe 1.) that Holt was engaged in the business of dealing in firearms; 2.) that Holt engaged in such business without a license issued under federal law; and 3.) that Holt did so knowingly and .wilfully. Holt.was "engaged in the business of selling firearms at retail" because he devoted. time, attention, and labor to dealing in firearms as a regular course of trade at the Volusia County Flea

Market between February 18, 2003 and April 7, 2004 with the principal objective of profit through the repetitive purchase and resale of firearms. Holt did not merely make occasional sales or exchanges of firearms to enhance his personal collection or for a hobby. Rather, he possessed a significant number of inexpensive shotguns, rifles, and handguns for resale. The BATF seized 52 inexpensive firearms from Holt that were valued at $100˙ to $300. There is also probable cause to believe that Holt acted "wilfully," *i.e.,* that he acted voluntarily and purposely, with the specific intent to do something the law forbids, and with bad purpose either to disobey or disregard the firearms licensing law. Indeed, Holt sold firearms without a license after having been warned by the BATF in October 2002.

In summary, there is probable cause to believe that the 52 firearms listed in the amended verified complaint were involved in or used in a wilful violation of a criminal law of the United States, and are therefore subject to forfeiture under 18 U.S.C. § 924(d)(1). Also, there is probable cause to believe that the 52 firearms are subject to forfeiture because they are intended to be used in a violation of 18 U.S.C. § 922(a)(1) (engaging in a firearms business without a license), and are involved in a pattern of activities which includes a violation of 18 U.S.C. § 922(a)(1) (engaging in a firearms business without a license).

*See* 18 U.S.C. §§ 924(d)(1) and 924(d)(3)(C).

### B. Timeliness of Commencement

In order to protect the rights of firearm owners, Congress found it necessary to set time limits for the speedy commencement of any forfeiture action, and to delimit which forfeiture cases the federal courts may adjudicate. Although probable cause exists for the forfeiture of the 52 firearms, this Court nevertheless must dismiss this action for lack of subject matter jurisdiction because government did not commence it within 120 days of the seizure. It is not the role of the judiciary to change the plain meaning of a statute, or to rebalance public policy already weighed by Congress.

### 1. The Plain Language of the Statute

■ In construing the meaning of 18 U.S.C. § 924(d)(1), this Court first looks to the plain language of the statute, and interprets the words "any action or proceeding for the forfeiture of firearms" with their ordinary and plain meaning—the way those words are commonly understood. Of course, the dictionary contains many alternative definitions of the word "any." [7] But most words in English have multiple definitions. Multiple definitions do not make words inherently ambiguous as they are commonly used and understood.[8]

---

7. *See, e.g.,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed., Houghton Mifflin Co.2000)(defining "any" as "1. One, some, every, or all without specification" and "2. Exceeding normal limits, as in size or duration")(usages omitted), *available at* http://www.bartleby.com; MERRIAM-WEBSTER ONLINE DICTIONARY, (defining "any" as "1: one or some indiscriminately of whatever kind: a: one or another taken at random[;] b: EVERY—used to indicate one selected without restriction[;] 2: one, some, or all indiscriminately of whatever quantity: a: one or more—used to indicate an undetermined

number or amount[;] b: ALL—used to indicate a maximum or whole c: a or some without reference to quantity or extent[;] 3 a: unmeasured or unlimited in amount, number, or extent[;] b: appreciably large or extended")(usages omitted), *available at* http://www.m-w.com. *See also* http://dictionary.reference.com (defining "any" as "One, some, every, or all without specification")(usages omitted).

8. An opinion written by Chief Justice Traynor of the Supreme Court of California states that

The word "any" is plain and unambiguous in the context of § 924(d)(1). As used in § 924(d)(1), the adjective "any" is synonymous with "every." In common usage, it would be wrong to understand the phrase "any action or proceeding for the forfeiture of firearms" as meaning "any action for the forfeiture of firearms except a judicial action for the forfeiture of firearms." It would be equally wrong to understand "any action or proceeding for the forfeiture of firearms" as including a judicial action for the forfeiture of firearms if and only if there had been no earlier commencement of a related non-judicial forfeiture proceeding. The language "any action or proceeding for the forfeiture of firearms shall be commenced ..." cannot be fairly read as permitting the government to select "any" one of several administrative and judicial forfeiture proceedings for commencement within 120 days, and then to commence the other related forfeiture proceedings at the government's leisure.

The common meaning of "proceeding" includes administrative and judicial proceedings. The common meaning of the word "action" includes civil actions commenced in the district court. Fed. R.Civ.P. 2—3. The term "any action or proceeding" therefore includes not only administrative (non-judicial), but also judicial actions. Said differently, "any action" includes "judicial actions." Applying a plain and strict interpretation of the statute, *any* action or proceeding for forfeiture—not just an administrative one—must be commenced within 120 days of seizure.

Viewing the 120-day limitation in the context of the two related firearms forfeiture statutes does not create an ambiguity, and does not change the result. *See* 18 U.S.C. § 924(d)(1) (authorizing and limiting the forfeiture of firearms) and 18 U.S.C. § 983 (establishing procedures for non-judicial and judicial forfeitures). First, the meaning of the phrase "any action or proceeding for the forfeiture of firearms" in § 924(d)(1) is explained in part by the language of the forfeiture statute on which § 924(d)(1) depends. *See generally* 18 U.S.C. § 983. In § 983, Congress uses the term "proceeding" broadly, as expressly including both non-judicial (administrative) forfeiture proceedings and judicial forfeiture proceedings. *See* 18 U.S.C. § 983(e)(2)(B).[9] Congress refers

---

The meaning of particular words or groups of words varies with the * * * verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or reader (not excluding judges). * * * A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.

*Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co., Inc.,* 69 Cal.2d 33, 38, 442 P.2d 641, 644—45 (1968) (omissions in original), *citing* Corbin, *The Interpretation of Words and the Parole Evidence Rule,* 50 CORNELL L.Q. 161, 187 (1965). Judge Alex Kozinski, however, takes issue with Chief Justice Traynor's approach:

By giving credence to the idea that words are inadequate to express concepts, *Pacific Gas* undermines the basic principle that language provides a meaningful constraint on public and private conduct. If we are unwilling to say that parties, dealing face to face, can come up with language that binds them, how can we send anyone to jail for violating statutes consisting of mere words lacking "absolute and constant referents"? How can courts ever enforce decrees, not written in language understandable to all, but encoded in a dialect reflecting only the "linguistic background of the judge"? Can lower courts ever be faulted for failing to carry out the mandate of higher courts when "perfect verbal expression" impossible?

*Trident Center v. Connecticut General Life Insurance Co.,* 847 F.2d 564, 569 (9th Cir.1988).

9. Section 983(e)(2)(B) provides: "(B) Any proceeding described in subparagraph (A) shall be commenced—(i) if nonjudicial, within 60 days of the entry of the order granting the

both to "nonjudicial [administrative] civil forfeiture proceedings," 18 U.S.C. § 983(a)(1)(A)(i), (a)(1)(A)(iii)(II), (a)(2)(A), (e)(1), and to "judicial civil forfeiture proceedings," 18 U.S.C. § 983(b)(1)(A), (b)(2)(A).

In contrast, Congress uses the term "action" narrowly—only when modified by the adjective "judicial," *e.g.,* "civil judicial forfeiture action." *See* 18 U.S.C. § 983(a)(1)(A)(ii)—(iii). Congress' narrow use of the term "action" is consistent with the meaning of "action" in Fed.R.Civ.P. 2 ("There shall be one form of action to be known as 'civil action'") and in Fed. R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court"); see also, 18 U.S.C. § 983(a)(3)(A) (civil forfeiture complaint begins by filing a complaint for forfeiture in the manner set forth in the admiralty rules). Congress uses the terms "proceeding" and "action" consistently in the 120–day limitation of § 924(d)(1). The term "any proceeding" therefore includes judicial proceedings, and the term "any action" includes judicial actions.

Lastly, the 120–day limitation is codified in § 924(d)(1) as part of a proviso clause that protects firearms owners by limiting the government's forfeiture powers:

> *Provided,* That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition

shall be commenced within one hundred and twenty days of such seizure.

18 U.S.C. § 924(d)(1). The context supports the plain reading of the 120–day limitation as barring the government's power to commence an untimely judicial forfeiture action, and restricting the Court's power to grant untimely forfeiture relief.

### 2. The Legislative History of the Firearm Forfeiture Laws

Because the statutory language is clear, a review of the legislative history of 18 U.S.C. § 924(d)(1) is unnecessary. For the reasons discussed above, the forfeiture statutes are not inescapably ambiguous, and the resulting application is neither absurd nor internally inconsistent. This Court will not create an ambiguity with legislative history. Rather, the Court finds that the plain language of § 924(d)(1) clearly and conclusively expresses legislative intent.

An examination of the legislative history of the firearm forfeiture laws, however, does not change the result. Since the enactment of the original firearms forfeiture provisions as part of the Omnibus Crime Control and Safe Streets Act of 1968, Congress has balanced two public policies—assisting law enforcement authorities in combating increasing crime, and permitting the private ownership of firearms by law-abiding citizens for lawful purposes without undue or unnecessary restrictions or burdens. Congress is the appropriate forum for striking the appropriate balance between public safety and individual rights, and this Court is constrained by the choice made (and the language chosen) by our elected representatives.

In the nearly forty years since Congress enacted the civil forfeiture statutes, there

---

motion; or (ii) if judicial, within 6 months of the entry of the order granting the motion."

is almost no recorded debate regarding the 120–day limit for commencing forfeiture actions. In 1968, Congress enacted 18 U.S.C. § 924(d)(1) as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 226 (1968). Regarding the purpose of Title IV, which contained the forfeiture provisions, a Senate Report dated April 29, 1968 provided as follows:

> The principal purposes of title IV are to aid in making it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States.
>
> *     *     *     *     *     *
>
> It is not the purpose of the title to place any undue or unnecessary restrictions or burdens on responsible, law-abiding citizens with respect to the acquisition, possession, transporting, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity. The title is not intended to discourage or eliminate the private ownership of such firearms by law-abiding citizens for lawful purposes, or to provide for the imposition, by regulations, of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of the title.

S.Rep. No. 90–1097, at 2 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113–14.

That same year, Congress amended the statute by passing the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1223 (1968). According to a House Report dated June 21, 1968, "[t]he principal purpose of H.R. 17735, as amended, is to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.R.Rep. No. 90–1577, at 2 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411. According to the report, the legislation was needed to respond to the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." H.R.Rep. No. 90–1577, at 3; 1968 U.S.C.C.A.N. at 4412. In enacting the Gun Control Act, Congress was concerned with "the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 364, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (citation omitted). Since enactment, every session of Congress has attempted to amend the Gun Control Act. *See* H.R.Rep. No. 99–495, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1329; *see also* Historical and Statutory Notes, 18 U.S.C.A. § 924 (West 2005).

In 1986, Congress passed the Firearms Owners' Protection Act, Pub.L. No. 99–308, 100 Stat. 456 (1986), which added paragraph (1) to subsection (d)—including the 120–day limit for commencing "[a]ny action or proceeding" for forfeiture.[10] A House Report dated March 14, 1986 stated the purpose of the legislation:

---

**10.** The Firearms Owners' Protection Act ["FOPA"] originated in the Senate in July 1985 as S. 49, 99th Cong. (1986). The Senate passed the bill in July 1985 by a vote of 79–15 in favor of the bill. The House first considered FOPA in March 1986, when Rep. William J. Hughes (D–NJ) introduced the Federal Firearms Law Reform Act of 1986, H.R. 4332, 99th Cong. (1986). In April 1986, Rep. Volk-

mer introduced FOPA as a substitute amendment. *See* 132 Cong. Rec. H1649–03, at 1 (1986). The House adopted Rep. Volkmer's measure in lieu of H.R. 4332, and enacted FOPA by a vote of 292–130 in favor. President Reagan signed FOPA into law on May 19, 1986. *See* http://thomas.loc.gov/home/search.html.

[to] relieve the nation's sportsmen and firearms owners and dealers from unnecessary burdens under the Gun Control Act of 1968, to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking, and to improve administration of the Act.

H.R.Rep. No. 99–495, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327. Nevertheless, as might be inferred from its name, the Firearms Owners' Protection Act principally protected the rights of gun owners. *According to the bill, the existing firearms statutes and enforcement policies posed numerous problems for gun owners.* Specifically, Congress found the legislation necessary to protect the citizens' rights to bear arms, and to reaffirm the intent of Congress as expressed in the Gun Control Act of 1968—namely, to refrain from placing undue burdens on law-abiding citizens with respect to the possession or use of firearms. 132 Cong. Rec. H1649–03, at 81 (1986).

In urging passage of the bill, the sponsor of the Firearms Owners' Protection Act, Rep. Harold L. Volkmer (D–Missouri), went much farther. He declared that law enforcement agencies enforcing the existing statutes had abused gun owners' civil liberties. 132 Cong. Rec. H1649–03, at 6–10. Rep. Volkmer also criticized the alternate bill pending before the House because it "[did] not require an agency to bring *judicial* actions within 120 days, or any other limit, of a seizure." 132 Cong. Rec. H1649–03, at 10 (emphasis supplied).

In 1998, Senators Patrick Leahy (D–Vermont) and Joseph Biden (D–Delaware) introduced a Senate bill on President Clinton's behalf that would have weakened the 120–day limitation enacted in the Firearms Owners' Protection Act. *See* Anti–Gang and Youth Violence Control Act of 1997, S. 362, 105th Cong. (1997), 143 Cong. Rec.

S1659–03, at 1661–64. The text accompanying the Senate bill sought the modification of the 120–day limitation on the grounds that the literal wording of § 924(d) might require a district court to dismiss any forfeiture action in the district court that had not been commenced within 120 days of the seizure. The section-by-section analysis printed in the Senate record by unanimous consent provided:

> subsection (e) clarifies an ambiguity in the present statute relating to the 120–day period in which a forfeiture action must be filed. **Presently, the statute says that a forfeiture proceeding must be filed within 120 days of the seizure of the property. This was intended to force the government to initiate a forfeiture action promptly.** In one case, however, where the government did initiate an administrative forfeiture action within the 120–day period, the claimant filed a claim and cost bond which required the government to begin the forfeiture action over again by filing a formal civil judicial proceeding in federal court. The claimant then moved to dismiss the judicial proceeding because the complaint was filed outside the 120–day period. **The court granted the motion to dismiss because the literal wording of § 924(d) requires any forfeiture action against the firearm to be filed within 120 days of the seizure. This interpretation, however, leads to unjust results** in cases where the government promptly commences an administrative forfeiture action but the claimant waits the full time allotted to him to file a claim. (Under Section 101 of this Act, the claimant would have 30 days from the date of publication of notice of the administrative forfeiture action to file a claim, which is likely to be several months after the seizure even if the government initiated the administrative forfeiture almost immediately after the seizure.) **In such cases, Congress**

could not have intended the 120–day period for filing a judicial complaint to count from the date of the seizure; indeed, it is often the case that the claimant doesn't even file the claim until more than 120 days have passed. **Thus, the amendment clarifies the statute to make clear that the government must initiate its administrative forfeiture proceeding within 120 days of the seizure and then will have 120 days from the filing of a claim, if one is filed, to file the case in federal court.** The amendment also tolls the 120–day period during the time a related criminal indictment or information is pending.

Section–by–Section Analysis, Anti–Gang and Youth Violence Control Act of 1997, S. 362, 105th Cong., 143 Cong. Rec. S1659–03, at 1664 (1997)(internal citation omitted)(bold emphasis supplied). The Senate bill, however, died in committee.[11]

### 3. Applying the 120–Day Limitation

The United States Court of Appeals for the Eleventh Circuit has never been asked to determine whether a civil proceeding to forfeit firearms is untimely under 18 U.S.C. § 924(d)(1) when it is commenced in the district court more than 120 days after the seizure. This is a case of first impression in this circuit. Only two circuit courts have weighed in on that issue, the Sixth Circuit and the Seventh Circuit, and those courts found that the word "any" is ambiguous. Out of respect for the opinions of those circuit courts, this Court proceeds cautiously in disagreeing.[12]

In *United States v. Ninety–Three (93) Firearms*, 330 F.3d 414 (6th Cir.2003), the Sixth Circuit found the statutory term "any" to be ambiguous. 330 F.3d at 421, 423. In light of the text and structure of the statute, and public policy prioritizing less formal and less expensive administrative proceedings, the Court found "that § 924(d)(1) does not mandate that judicial actions be brought within 120 day of the seizure, as long as an administrative proceeding has been brought within that timeframe [sic]." 330 F.3d at 422–23. Specifically, the Court held that " § 924(d)(1)'s ambiguous statutory language 'any action or proceeding' should not be interpreted to mean 'every' but rather 'either' a judicial action or an administrative proceeding" such that "either an administrative or a judicial forfeiture action brought within 120 days of the seizure will toll the § 924(d)(1) deadline." 330 F.3d at 417, 423. The Sixth Circuit affirmed the district court's grant of summary judgment for the government, and affirmed the seizure of 93 firearms from a man convicted of possessing unregistered firearms and silencers.[13]

---

**11.** The Senate's last major action on the bill was in October 13, 1998, when it was referred to the Senate Subcommittee on Youth Violence. The House counterpart to this bill, H.R. 810, encountered a similar fate. The last major action on H.R. 810 was on March 14, 1997, when it was referred to the House Subcommittee on Early Childhood, Youth, and Families. *See* H.R. 810, 105th Cong. (1998), *available at* http://thomas.loc.gov/home/search.html.

**12.** Indeed, the earlier of the two decisions, *United States v. Ninety–Three (93) Firearms*, 330 F.3d 414, 421 (6th Cir.2003), reasoned:
We agree that the "meaning of the word 'any' in § 924(d)(1) is ambiguous." *Twelve Firearms*, 16 F.Supp.2d at 741. As the government points out, the proof of the ambiguity is evidenced by the disagreement over its meaning; some district courts have read "any" to mean "either/or," whereas at least one district court has interpreted "any" to mean "all" or "every."

**13.** Although the government must normally return seized property to its rightful owner on the completion of criminal proceedings, a potential claimant has no property right in a weapon that is "intrinsically illegal in character." *Cooper v. City of Greenwood*, 904 F.2d 302, 304 (5th Cir.1990), cited in *Ninety–Three Firearms*, 330 F.3d at 419. The government makes no contention that the 52 firearms

In *United States v. Miscellaneous Fire-arms*, 376 F.3d 709 (7th Cir.2004), the Seventh Circuit also found the statutory term "any" to be ambiguous. 376 F.3d at 712. The ambiguity permitted the Court to examine the entire text and structure of the statute, as well as public policy.[14] 376 F.3d at 712–13. The panel reasoned that if Congress wanted all proceedings to be subject to the 120–day time limitation, it could have used the word "all" instead of "any." 376 F.3d at 713. Rejecting the claimant's argument that the judicial forfeiture action was untimely, the Seventh Circuit affirmed the district court's denial of the claimant's motion for partial summary judgment. 376 F.3d at 711, 713. The Court concluded that "the time limitation in § 924(d)(1) merely requires the United States to initiate either an administrative forfeiture proceeding or a judicial forfeiture action within 120 days of seizure." *Id.*

■■■ In the United States Court of Appeals for the Eleventh Circuit, however, forfeitures are not favored, and those seeking forfeiture in this circuit must strictly comply with the letter of the law. *See United States v. One 1936 Model Ford V–8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939); *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1547 (11th Cir.1987). Although there is some attraction to the public policy result of the Sixth and Seventh Circuit decision in favor of law enforcement's request to confiscate firearms from criminals, the Eleventh Circuit will likely disagree with the strained reading of the term "any action or proceeding for the forfeiture of firearms" as excluding most judicial actions for the forfeiture of firearms.

The Eleventh Circuit is more likely to agree with the sound analysis of the United States District Court for the Eastern District of Virginia that the statutory term "any" is plain and unambiguous. *See United States v. Fourteen Various Firearms*, 889 F.Supp. 875, 877 (E.D.Va.1995). According to that court, the term "any action or proceeding" includes not only administrative, but also judicial proceedings because 1.) the common meaning of "proceeding" includes administrative and judicial litigation, and 2.) the word "action" includes civil actions. 889 F.Supp. at 877, *citing* Fed.R.Civ.P. 2—3. Said differently, "any" also includes "judicial." 889 F.Supp. at 878. Applying a plain and strict interpretation of the statute, the Eastern District of Virginia held that *any* action or proceeding for forfeiture—not just an administrative one—must be commenced within 120 days of seizure. 889 F.Supp. at 878. The Court further observed that Congress is free to amend § 924(d)(1) if it later decides that the 120–day period is too short for potentially innocent firearms owners or for the government, but that the Court is not empowered to do so. 889 F.Supp. at 878. The district court therefore dismissed the forfeiture action for lack of subject matter jurisdiction. 889 F.Supp. at 877–78.

This Court has also considered an argument which the government does not

---

subject to forfeiture in this case are intrinsically illegal, such as fully automatic weapons, or that the owner is himself a felon.

14. Following, the Sixth Circuit, the Seventh Circuit also relies on § 924(d)(1)'s express incorporation of the forfeiture provisions of the IRS code, which in turn incorporate the customs law's five-year statute of limitation

for judicial actions. *See Miscellaneous Firearms*, 376 F.3d at 712—13; *accord, Ninety–Three (93) Firearms*, 330 F.3d at 421—22. It is strange to look so far away for the applicable limitation. Section 924(d)(1) spells out the 120–day limitation just two sentences below the sentence that incorporates the seizure provisions of the IRS code "so far as applicable."

make. Might Congress have intended "any action or proceeding for the forfeiture of firearms" to mean a single forfeiture proceeding that commences administratively, and then "evolves" into a judicial forfeiture action on the filing of an administrative claim? [15] *See* 18 U.S.C. § 983(a)(2)(A) and (a)(3)(A) ("the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims ..."). Such a Congressional intent might justify a finding that § 924(d)(1) does not mandate that judicial actions be brought within 120 days of the seizure so long as the same case has been commenced as an administrative proceeding within 120 days of seizure. There is no evidence in the statute or legislative history, however, that Congress intended such a nontraditional reading of the statute. Section 983 carefully distinguishes between nonjudicial proceedings and judicial proceedings, and § 924(d)(1) includes both. Moreover, such an approach does violence to the traditional meaning of "commencing" a judicial action, which is accomplished by filing a complaint with the district court. *See* Fed.R.Civ.P. 2—3; 18 U.S.C. § 983(a)(3)(A); *accord, Fourteen Various Firearms,* 889 F.Supp. at 878.

### 4. The Untimeliness of This Forfeiture Action

■ Pursuant to a search warrant, the BATF seized 56 firearms from Jack Holt's residence on April 7, 2004. Amended Verified Complaint, Docket No. 6 at 8—9, paragraphs H, J. The government has certified to this Court that this "civil forfei-

ture action is not related to pending or closed civil or criminal case(s) previously filed in this Court, or any other Federal or State court, *or administrative agency.*" Docket No. 2 (emphasis supplied). Indeed, there is no sworn evidence in the file as to the commencement or existence of any administrative proceeding involving Holt's firearms, and no evidence of any criminal charges having been brought against Holt, pending or dismissed. *See generally,* Amended Verified Complaint, Docket No. 6.

Contrary to the government's certificate that there are no related administrative actions, however, the government's motion to reconsider states that administrative forfeiture proceedings were initiated against the 56 seized firearms on an unspecified date, and that two Notices of Forfeiture Proceedings (one for 49 firearms and one for 7 firearms) were sent to Jack Holt and others "on or about July 12, 2004 via certified mail." Docket No. 7 at 2. Publication in the Wall Street Journal was complete, according to the government, on July 8, 2004, and Jack Holt, Jr., Jack Holt III, and Ryan Holt filed verified claims with BATF on August 13, 2004. *Id.*

The government commenced this civil forfeiture action in the district court by filing its original complaint for forfeiture in rem on November 12, 2004. Docket No. 1. This civil forfeiture action was filed 123 days after the filing of Holt's administrative claim on July 12, 2004, and 219 days (7 months, 5 days) after the seizure on April 7, 2004. Accordingly, this action is untimely under both 18 U.S.C. § 983(a)(3)(A)

---

**15.** The Eastern District of Virginia considered a similar argument that the government had not raised: that the filing of a notice in the administrative proceeding effectively commences the judicial action because administrative notice is a prerequisite to judicial action. *Fourteen Various Firearms,* 889 F.Supp. at 878. The Court rejected as unnecessary

and inappropriate such a "stretch of the traditional meaning of commencing a judicial action (filing a complaint, *see* Fed.R.Civ.P. 3)," and found that such a nontraditional interpretation would undermine the speedy adjudication required by Congress in order to protect firearm owners. 889 F.Supp. at 878.

(requiring the government to file a complaint for forfeiture not later than 90 days after an administrative claim has been filed) and 18 U.S.C. § 924(d)(1) (requiring the government to commence any action for the forfeiture of firearms within 120 days of seizure).

## IV. CONCLUSION

It is **ORDERED** that Plaintiff's Motion for Reconsideration [Docket No. 7] is **GRANTED** as to reconsideration. However, on reconsideration, the result stands. This action is untimely, and is should be dismissed for lack of subject matter jurisdiction. This Court has reviewed the verified complaint pursuant to Local Rule 6.01(b) and (c)(18) and Local Admiralty Rules 7.03(b)(1) and 7.01(i), and has determined that this civil forfeiture action is barred as untimely, and that the conditions for an in rem action do not appear to exist. The Court therefore declines to issue an order for the arrest of the property. *See* Supplemental Rule C (3)(a)(ii)(A); Local Admiralty Rule 7.03(b)(1). Having once reconsidered a prior ruling, this is a final order. *See* 28 U.S.C. § 636(b)(1)(A).